IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| C. CLARK HODGSON, JR., RECEIVER FOR PHILADELPHIA ALTERNATIVE ASSET MANAGEMENT COMPANY, LLC, AND ITS PARTNERS, AFFILIATES, SUBSIDIARIES AND RELATED ENTITIES,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>KOTTKE ASSOCIATES, LLC,<br><br>　　　　　Defendant. | :<br>:<br>:<br>:<br>:　Civil Action No. 06-5040<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIM OF DEFENDANT,
KOTTKE ASSOCIATES, LLC, OR, IN THE ALTERNATIVE, TO DISMISS
DEFENDANT'S REQUEST FOR ATTORNEYS' FEES**

**I.      INTRODUCTION**

    In spite of the admitted fraud that Paul Eustace ("Eustace") perpetrated on Option Capital Fund, LP[1] ("Option Capital"), Kottke Associates, LLC ("Kottke") continues to argue that the Mutual Release and Settlement Agreement ("Settlement Agreement") executed by Eustace, on behalf of Option Capital, was somehow not fraudulent, and may form the basis of a breach of contract counterclaim (the "Counterclaim") against the Receiver. What Kottke refuses to acknowledge -- but what the evidence clearly shows -- is that the Settlement Agreement was part and parcel of Eustace's scheme to defraud Option Capital and its creditors, and therefore, is unenforceable.

---

[1] See e.g., Consent Order at § II, ¶¶ 1-21, attached as Exhibit B to Plaintiff's Memorandum of Law in Opposition to Motion to Transfer Venue of Kottke Associates, LLC.

Furthermore, Kottke's Response to the Motion to Dismiss the Counterclaim of Defendant, or, in the Alternative, to Dismiss Defendant's Request for Attorneys' Fees (the "Response") for the first time asserts various irrelevant and erroneous claims against Philadelphia Alternative Asset Fund, LP (the "LP Fund"), which have no bearing on the outcome of the Receiver's Motion to Dismiss. Kottke also refuses to acknowledge that it is not entitled to recover attorneys' fees in its contract action and aimlessly cites to inapplicable rules of law and inapposite court decisions in its attempt to circumvent the "American Rule" regarding attorneys' fees. For all the reasons asserted in the Receiver's Motion to Dismiss, and further stated herein, Kottke's Counterclaim must be dismissed, or, in the alternative, its request for attorneys' fees must be denied.

## II.   ARGUMENT

### A.   Option Capital Is Not Bound by the Fraudulent Settlement Agreement.

In its Response, Kottke again argues that by asserting claims on behalf of Option Capital for the return of the $159,000 transfer, the Receiver is in breach of the Settlement Agreement that Kottke believes releases it from such claims. (See Response at p. 5). However, the fatal flaw in Kottke's argument is that it continues to ignore the fact that the Settlement Agreement was the product of a fraud, and is therefore unenforceable. See e.g., Adena, Inc. v. Cohn, 162 F. Supp.2d 351, 357 (E.D. Pa. 2001) (holding that a contract's release will be found unenforceable if procured by fraud, duress or mutual mistake) (internal quotations omitted). Clearly, and as previously stated to this Court by the Receiver, Kottke's proffered rule of law would unthinkably allow a thief such as Eustace to steal money from his victims and then grant a release, precluding his victims from ever asserting a claim for the return of the stolen funds. For obvious reasons, this is not the law.

Kottke continues to overstate the significance of Judge Kocoras' Order, which simply confirmed a settlement agreement arising from a dispute over Kottke's garnishment of funds at FC Stone LLC ("FC Stone"). (See Response at pp. 2-5). The Order neither considered nor ruled upon whether the settlement was a fraudulent transfer or whether the settlement was procured by Eustace's fraud. Courts have repeatedly held that a settlement agreement, and corresponding judgment entered pursuant to the settlement agreement, may be set aside as fraudulent. See e.g., Patterson v. TNA Entertainment, LLC, 2006 WL 587696, at *2 (E.D. Wisc. Mar. 10, 2006) (holding that because the settlement agreement was procured by fraud, the settlement agreement should be rescinded and the judgment entered pursuant to the settlement agreement should be vacated). Here, the Settlement Agreement and subsequent Order confirming the Settlement Agreement were the product of Eustace's fraud, and thus, may be set aside and deemed not binding on the Receiver. (See Motion to Dismiss Counterclaim at p. 7).

Kottke further attempts to bind the Receiver to the fraudulent Settlement Agreement by arguing that a receiver is only empowered to reject executory contracts, and cites to two inapplicable decisions to support this erroneous allegation. (See Response at pp. 5-7). First, Kottke inexplicably cites to Gordon v. Hartford Sterling Corp., 179 A. 234 (Pa. 1935), wherein the court upheld the receiver's decision, over the objection of creditors, to settle a lawsuit on behalf of the entity over which was appointed receiver. Id. at 236. The Gordon case has absolutely no relevance to the instant matter as it clearly does not address the pertinent question presented here, i.e., whether a receiver may avoid an agreement made on behalf of the receivership entity prior to the receiver's appointment, if the agreement was made with the intent to defraud the receivership entity and its creditors. Clearly, the answer to this question is an unequivocal "yes", and the decision in Gordon in no way suggests otherwise.

Equally puzzling is Kottke's citation to LaMagna v. FDIC, 828 F. Supp. 1 (D.D.C. 1993). LaMagna is irrelevant, given the facts of that case. LaMagna addressed the ability of the Federal Deposit Insurance Corporation ("FDIC"), as receiver for a bank, to repudiate contracts under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). Id. at 2. Obviously, LaMagna is readily distinguishable from the instant matter, as FIRREA is not applicable in this case and the Receiver is in no way limited by any of its provisions. Furthermore, while the LaMagna decision may have placed a limitation on a receiver's authority to reject otherwise valid contracts under FIRREA, it placed no such limitation on a receiver's ability to avoid contracts procured by fraud or contract that constitute fraudulent transfers, such as the Settlement Agreement. Lastly, and perhaps most significantly, the "executory" limitation set forth in LaMagna has been expressly rejected by the United States Court of Appeals for the Third Circuit. See Hennessy v. F.D.I.C., 58 F.3d 908, fn. 8 (3d Cir. 1995) ("we are unpersuaded by the district court's reasoning in *LaMagna*. The district court's conclusory holding that § 1821(e) does not permit the receiver to repudiate a 'nonexecutory' contract lacks support in both the statutory language and the case law. As many courts have noted, the statute explicitly provides that a conservator or receiver 'may disaffirm *any* contract or lease,' not just executory contracts . . . we are unable to conclude that the FDIC's power of repudiation is limited only to executory contracts"). Though Kottke refuses to accept this fact, there is no limitation on the Receiver's ability to avoid the effects of a fraudulent contract. See e.g., Smith v. Baltimore & O.R. Co., 48 F.2d 861, 869-72 (W.D. Pa. 1931) (permitting the receiver of bank to disaffirm fraudulent contract made prior to appointment in spite of prior performance under the contract).

4

### B. Kottke's New Allegations Against the LP Fund Are Frivolous.

Surprisingly, Kottke does not limit its Response to addressing the relevant issue at hand -- the proposed dismissal of the Counterclaim -- and uses the Response as a forum to assert new and frivolous allegations against the LP Fund, who was not even a party to the Settlement Agreement. Kottke's Counterclaim only asserts a claim against <u>Option Capital</u>, for allegedly breaching the Settlement Agreement and seeks to retain or recover the $159,000 that it received from Option Capital. (<u>See</u> Counterclaim at ¶ 11). Because the LP Fund was not a party to the Settlement Agreement, Kottke did not, and could not, assert a claim against the LP Fund for breach of the Settlement Agreement. However, in the Response, Kottke alleges, for the first time, that the LP Fund is somehow liable for "aiding and abetting" Option Capital to violate the Order of Judge Kocoras. (<u>See</u> Response at 5). Plainly stated, Kottke's newly concocted "aiding and abetting" argument is absurd and well beyond the scope of what Kottke has asserted in its Counterclaim.

The Complaint asserts five counts against Kottke. (<u>See generally</u>, Complaint). Counts I, II, and III of the Complaint state claims against Kottke for fraudulent transfer pursuant to the Uniform Fraudulent Transfer Act ("UFTA") and/or the corresponding versions of the UFTA adopted by Pennsylvania and Illinois. In spite of Kottke's erroneous contention,[2] the fraudulent transfer claims are brought solely on behalf of the LP Fund, as a creditor of Option Capital. (<u>See</u> Complaint at ¶¶ 39, 56 and 72). Counts IV and V, which state claims against Kottke for unjust enrichment and conversion, are brought exclusively on behalf of Option

---

[2] Mr. Hodgson was appointed as "Receiver for Philadelphia Alternative Asset Management Company, LLC and Its Partners, Affiliates, Subsidiaries and Related Entities", and thus that is his official title. While the Receiver's title is set forth in the Complaint, the fraudulent transfer claims brought against Kottke are not, and could not, be asserted on behalf of Option Capital, which was the <u>transferor</u> of the funds. The Complaint clearly specifies which Receivership entity or entities are asserting the respective claims against Kottke.

Capital, and not the LP Fund. Because the LP Fund had absolutely nothing to do with Option Capital asserting Counts IV and V against Kottke, and it is the assertion of those counts that forms the basis of Option Capital's alleged violation of the Order, the new "aiding and abetting" allegations against the LP Fund are without merit. Furthermore, the cases cited by Kottke in support of its "aiding and abetting" argument against the LP Fund are inapplicable to the instant matter. (See Response at p. 5) (citing Fleming v. North Georgia Mfg. Co., 33 F. Supp. 1005 (N.D. Ga. 1940) (absolutely no discussion of aiding and abetting); Bridgeport Guardians v. Delmonte, 371 F. Supp.2d 115 (D. Conn. 2005) (holding that it is improper for any person to assist a party to violate a court ordered injunction – however, there must be some showing that the person, in fact, actively assisted the violation of the injunction)).

Lastly, and for reasons that remain unclear, Kottke now alludes to the fact that the LP Fund became a creditor of Option Capital after the Settlement Agreement was executed, as though this distinction is somehow meaningful. (See Response at pp. 1 & 5). To the contrary, these new allegations concerning when the LP Fund became a creditor are irrelevant, as the law concerning fraudulent transfers clearly provides that a creditor may avoid a fraudulent transfer that occurred before the party became a creditor of the debtor. (See UFTA § 4(a)) ("a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred") (emphasis added).

Thus, each and every one of Kottke's new allegations regarding the LP Fund are either erroneous or extraneous, and in no way offer a valid defense to the Receiver's Motion to Dismiss the Counterclaim. Therefore, the Receiver's Motion to Dismiss the Counterclaim should be granted.

### C.     Kottke Is Not Entitled to Attorneys' Fees.

In its effort to retain funds from the Receivership estate to which it is clearly not entitled, Kottke improperly seeks attorneys' fees from the Receiver on a claim based upon an alleged breach of the Settlement Agreement. (See Response at p. 7). After offering no legal support for its request for attorneys' fees in its Counterclaim, Kottke now cites to various cases whose factual predicates differ so significantly from the facts of the present case that it is the equivalent of offering no support at all.

For example, Kottke cites to Duignan v. Lincoln Towers Insurance Agency, Inc., 667 N.E.2d 608 (Ill. App. 1st Dist. 1996) in support of its argument that Option Capital should allegedly be required to reimburse Kottke for the attorneys' fees that it will incur while defending against the claims brought by the LP Fund. In Duignan, the court held that since the negligent actions of an insurance agent directly caused a policyholder to incur fees litigating coverage issues against its insurance carrier, a third party, the policyholder was entitled to collect those fees from the agent as part of the overall damages he sustained. Id. at 613. Here, Kottke has made absolutely no allegations, because it cannot, that any misconduct of Option Capital caused Kottke to incur attorneys' fees litigating against any third party, including the LP Fund. Because Option Capital's alleged breach of contract has not caused Kottke to incur fees litigating against a third party, the Duignan decision is inapplicable, and Kottke has once again failed to establish any basis for overcoming the general rule that a litigant in a contract action is not entitled to recover its attorneys' fees unless the contract specifically authorizes them.[3]

---

[3] Kottke has not cited any provision of the Settlement Agreement that authorizes it to collect attorneys' fees because no such provision exists.

In a last ditch effort to improperly recover attorneys' fees, Kottke cites to the alleged rule of law that attorneys' fees are recoverable in an action to enforce a court order. (See Response at p. 7) (citing Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399 (1923) (attorneys' fees recoverable in contempt proceeding where unsuccessful party to patent infringement suit improperly filed injunction lawsuit against successful party); In re All Trac Transportation, Inc., 310 B.R. 570 (Bankr. N.D. Tex. 2004) (fees only awarded after defendant found in contempt of court for violating provisions of automatic stay entered pursuant to 11 U.S.C. § 362(a)). Here, the Receiver, standing in the shoes of Option Capital, has not violated a court order and has not been held in contempt of court. Moreover, the Receiver has alleged and is seeking a determination that the $159,000 transfer to Kottke under the Settlement Agreement was a fraudulent transfer and that the Settlement Agreement and alleged confirming Order were made with the intent to defraud Option Capital and its creditors and are therefore not binding on the Receiver. In addition, the LP Fund did not violate the Order allegedly confirming the Settlement Agreement since the LP Fund was not a party to the Settlement Agreement and the LP Fund's fraudulent transfer claims were neither litigated nor resolved by the Order. There is simply no violation of a court order or contempt proceeding upon which Kottke can hope to justify its request for attorneys' fees. In sum, Kottke is clearly not entitled to recover attorneys' fees in this action and its improper request to do so, therefore, must be denied.

### III. CONCLUSION

For the foregoing reasons, Kottke's Counterclaim should be dismissed in its entirety, with prejudice. In the event the Counterclaim is not dismissed in its entirety, Kottke's request for attorneys' fees should be dismissed.

/s/ Daniel T. Fitch
Daniel T. Fitch
Nicholas M. Orloff
STRADLEY RONON STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA  19103
(215) 564-8000 – phone
(215) 564-8120 – fax

Attorneys for C. Clark Hodgson, Jr.,
Receiver for Philadelphia Alternative
Asset Management Company, LLC and Its Partners,
Affiliates, Subsidiaries and Related Entities

Dated:  March 19, 2007

# 560113