**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

C. CLARK HODGSON, JR., RECEIVER, et al.    :         CIVIL ACTION

                            v.                                    :

KOTTKE ASSOCIATES, LLC                        :         NO. 06-5040

**<u>MEMORANDUM</u>**

**Baylson, J.**                                                                 **July 31, 2007**

**I.  <u>Introduction</u>**

On November 14, 2006, C. Clark Hodgson, the Receiver for Option Capital Fund, LP
("Option Capital") and the Philadelphia Alternative Asset Fund, LP (the "LP Fund") filed a
Complaint in this Court against Kottke Associates, LLC ("Kottke"), asserting claims for
fraudulent transfer, unjust enrichment/constructive trust, and conversion/wrongful detention.
The Receiver seeks to recover approximately $662,000 he claims Paul Eustace ("Eustace"), the
general partner, trading advisor and commodity pool operator for Option Capital, improperly
transferred from the accounts of Option Capital to Kottke.

There are currently three outstanding motions in this case:  (1) Kottke's Motion to
Transfer Venue Pursuant to 28 U.S.C. Section 1404(a) (Doc. No. 5); (2) Kottke's Motion for
Judgment on the Pleadings (Doc. No. 7); and (3) the Receiver's Motion to Dismiss the
Counterclaim of Defendant Kottke or, In the Alternative, to Dismiss Defendant's Request for
Attorneys' Fees (Doc. No. 10).  For the following reasons, all three motions will be denied.

**II.  <u>Factual and Procedural Background</u>**

According to the Receiver's Complaint, Eustace formed Option Capital in May 2000.  He

operated Option Capital as "commodity pool" in which he solicited investors to purchase limited partnership interests and invested the resulting funds in the commodities market.  The investors in Option Capital, including the LP Fund, directly deposited the funds they wished to invest in Option Capital's trust account in Toronto, Canada.  In October 2000, Eustace, acting as general partner for Option Capital, opened an account with FC Stone LLC ("FC Stone"), a future commodities merchant, for the purpose of trading commodity futures through FC Stone on behalf of Option Capital.  Over the course of the next year, Eustace made a number of transfers from the Option Capital trust account to the FC Stone trading account

In May 2001, Eustace also entered into a Trading Advisory Agreement with Kottke unrelated to his activities with Option Capital.  According to the terms of that agreement, Eustace agreed to develop and implement trading strategies for Kottke, and to personally indemnify Kottke for any losses it sustained while he carried out trades on its behalf.  Within weeks of entering into this agreement, Kottke sustained approximately $630,000 in trading losses, and Eustace executed a promissary note for the full amount he owed Kottke.  He defaulted on the promissary note, and Kottke confessed judgment against Eustace in an action in the United States District Court for the Northern District of Illinois, Kottke v. Eustace, No. 01-5522 ("Illinois Action") in July 2001.  While attempting to execute this judgment, Kottke discovered the trading account Option Capital maintained with FC Stone and requested the court to order FC Stone to liquidate that account and turn the proceeds over to Kottke in satisfaction of Eustace's debt. Option Capital intervened in the action and denied that Eustace had any personal interest in the funds maintained in the FC Stone account.  In January 2002, Option Capital and Kottke entered into a Settlement and Release Agreement ("Settlement Agreement"), whereby Kottke released all

claims to the funds frozen in the FC Stone account and, in turn, received $159,000 in partial satisfaction of Eustace's debt.  District Judge Charles Kocoras, the judge presiding over the Illinois Action, signed an order approving the Settlement Agreement.

      The Receiver claims that, when Kottke entered into the Settlement Agreement, Kottke knew or reasonably should have known that Eustace would make the payment of $159,000 from the funds maintained in Option Capital's trading account with FC Stone, even though those funds belonged to Option Capital and its investors and not Eustace.  The Receiver further alleges that Kottke received and retained ten additional payments totaling $503,00 from Eustace using Option Capital's funds.  The Receiver further states that he did not learn that Eustace has paid off his personal debt to Kottke using Option Capital's funds until January 2006 when he received a set of documents from the Commodity Futures Trading Commission ("CFTC") relating to the Option Capital trust account and the FC Stone account.  He filed this action on November 14, 2006 to recover the approximately $662,00 in funds he claims were improperly transferred from Option Capital's accounts to pay off Eustace's personal debt to Kottke.

      On January 16, 2007, Kottke filed a Motion for Transfer of Venue pursuant to 28 U.S.C. § 1404(a) arguing that the present action is a continuation of the prior lawsuit before Judge Kocoras.  On the same date, Kottke filed its Answer, Affirmative Defenses and Counterclaims to the Receiver's Complaint.  In its Counterclaim, Kottke asserts that the Receiver is in breach of a Settlement Agreement reached in 2002 between Kottke and Option Capital in the Illinois Action. According to Kottke, the $159,000 transfer made pursuant to the Settlement Agreement was offered as consideration for that agreement, and the Settlement Agreement consequently precludes the recovery of transferred funds by the Receiver.

-3-

The Receiver filed a Motion to Dismiss Kottke's Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) on February 8, 2007, asserting that he is not bound by the release Eustace granted to Kottke on the behalf of Option Capital because the release was made with intent to defraud Option Capital and its creditors.

On February 1, 2007, Kottke filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) requesting this Court to enter judgment against the Receiver on all counts of the Complaint to the extent they seek to recover the $159,000 paid in consideration of the Settlement Agreement between Kottke and Option Capital.  Kottke asserts that the Receiver's action is a collateral attack on the judgment in the Illinois Action and this matter should therefore be referred back to that court for resolution.

## III. <u>Legal Standard</u>

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments.  <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1251, 1261 (3d Cir. 1994).  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  <u>Angelastro v. Prudential-Bache Sec., Inc.</u>, 764 F.2d 939, 944 (3d Cir. 1985).  A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff.  <u>Ransom v. Marrazzo</u>, 848 F.2d 398, 401 (3d Cir. 1988).

A motion for judgment on the pleadings pursuant to Rule 12(c) is governed by the same standard as a Rule 12(b)(6) motion to dismiss for a failure to state a claim upon which relief can

be granted.[1]  Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as an action between citizens of different states involving an amount in controversy greater than $75,000. The Court also has jurisdiction pursuant to 28 U.S.C. §§ 754 and 1692.

IV. **Discussion**

1. **Motion to Transfer Venue**

In its Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), Kottke requests the Court to transfer the present action to the United States District Court for the Northern District of Illinois, contending that this action is simply a continuation of Kottke's prior suit against Eustace before Judge Kocoras.  Kottke further argues that such a venue transfer is proper because, among other things, the matters raised in this action involve substantial issues of Illinois law and many of the material witnesses involved in this action reside in Illinois.  The Receiver responds that the present action is in fact a continuation of the receivership proceedings currently taking place before this Court.  He contends that the interests of both efficiency and cost effectiveness, as well as the Court's familiarity with the facts surrounding the receivership, should lead the Court to deny Kottke's motion.

---

[1]  The Receiver argues in his Memorandum in Opposition to Kottke's Motion for Judgment on the Pleadings that Kottke's Motion is premature because the pleadings in this action are not yet closed.  Motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) must be brought before filing an answer.  A Rule 12(c) motion, by contrast, may be made after the pleadings are closed.  The Receiver is technically correct that the pleadings are not yet closed in this action because he has not replied to Kottke's counterclaim.  Because no prejudice will result to the Receiver, the Court will nonetheless decide Kottke's motion.  As Kottke notes in its Reply in Support of its Motion for Judgment on the Pleadings, Kottke's Motion for Judgment on the Pleadings is addressed solely at the allegations made in the Complaint, which has been answered, and does not rely on the Counterclaim for its contentions.

Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The decision whether to transfer an action pursuant to § 1404(a) lies soundly within this Court's discretion.  See Lony v. E.I. DuPont de Nemours & Co., 886 F.2d 628, 631-32 (3d Cir. 1989).  And, as the moving party, the burden rests on Kottke to establish that the proposed venue transfer is proper.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

The Court is not limited to the factors enumerated in § 1404(a) in determining whether to grant a motion to transfer venue.  See Jumara, 55 F.3d at 879.  The Third Circuit has recognized a number of additional private and public factors a court may consider in evaluating such a motion.  The private interests include: (1) the plaintiff's choice of venue; (2) the defendants' preference; (3) where the claim arose; (4) the relative physical and financial condition of the parties; (5) the extent to which witnesses may be unavailable for trial in one of the forums; and (6) the extent to which books and records would not be produced in one of the forums.  See Miller v. Atkins Nutritionals, Inc., No. 04-5775, 2005 WL 503261, at *3 (E.D. Pa. Mar. 3, 2005) (citing Jumara, 55 F.3d at 879).  Public factors include: (1) enforceability of a judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty resulting from court congestion; (4) the local interest in deciding the controversy; (5) the public policies of the forums; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  Id.

This is not the first venue transfer motion this Court has encountered during the course of these receivership proceedings.  In this Court's September 18, 2007 opinion in Hodgson v.

-6-

Gilmartin, No. 06-1944, 2006 WL 2707397 (E.D. Pa. Sept. 18, 2006), this Court denied the

defendant Man Financial Inc.'s motion to transfer venue to the United States District Court for

the Northern District of Illinois.  The same considerations that led this Court to deny that motion

also apply here.

      With respect to the private factors, the Receiver's clear preference is for this action to

remain in this District and this factor should be accorded due weight.  This preference squares

with the larger goal of the receivership, to conserve the funds of the aggrieved investors, because

the Receiver, acting in his court appointed role on behalf of these investors, is compensated out

of the receivership estate.[2]  Kottke, of course, asserts that this action should be transferred to the

United States District Court for the Northern District of Illinois.  To the extent that Kottke's

preference is founded on its claim that the present action is a mere continuation of a prior action

in the Northern District of Illinois, the Court will not give it great weight.  The issue raised by the

Receiver's Complaint is whether Eustace, acting on behalf of Option Capital, fraudulently

transferred investor funds to Kottke.  Furthermore, although Kottke's office is located Illinois, it

is not clear that any of the alleged fraudulent transfers that are the subject of the Receiver's action

originated or ended in Illinois.  To the contrary, the Receiver asserts that the transfers took place

between accounts located in Canada.  It may be less convenient for Kottke to litigate this action

in this District than in the Northern District of Illinois.  However, Kottke is a future commissions

merchant with a substantial amount of assets, and the Court concludes that the relative costs of

---

[2]  The Receiver was appointed by this Court on the motion of the CFTC in the action
brought by the CFTC against Eustace and the Philadelphia Alternative Asset Management Co.
LLC, CFTC v. Eustace, No. 05-2973.  The Court recently approved the entry of a Consent Order
of Permanent Injunction and Other Relief Against Eustace in that action (Doc. No. 426).

litigating this case in Illinois will fall more heavily on the Receiver than they would on Kottke if the Court were to grant this transfer motion.  The Receiver has expended substantial time and assets in fulfilling his court-appointed role and requiring him to hire local Illinois counsel and take on the duty of educating a new court about the intricacies of these proceedings would incur substantial costs.  While many of Kottke's witnesses appear to be located in the Northern District of Illinois, at least one of the key witnesses in this action, Paul Eustace, lives in Canada and is subject to this Court's jurisdiction under the Consent Order recently entered in CFTC v. Eustace, 05-2973.  Finally, as the Court noted in its prior opinion, in light of modern document imaging technology, the location of books and records relevant to this matter is of limited significance.

Concerning the public factors, the Court finds that these factors also weigh against a transfer.  A judgment in this case would be equally enforceable in either jurisdiction.  Moreover, the litigation arising from Eustace's alleged fraudulent conduct has been ongoing in this Court for over two years, and the Receiver, who is based in Philadelphia and represented by a Philadelphia law firm, has been involved in recovering assets for investors injured by that conduct for over a year and a half.  This Court has given these receivership proceedings a high priority and is very familiar with the factual background of the receivership and Eustace's alleged fraudulent schemes.  The Court has issued numerous opinions in the two other actions currently pending before this Court related to these receivership proceedings, Harmelin v. Man, No. 06-1944 and CFTC v. Eustace, No. 05-2973.  To the extent that Court will be called upon to apply Illinois state law in this action, the advent of internet-based legal research significantly lessens the burden on this Court in learning the law of another jurisdiction.

In sum, for all of the reasons discussed above, the Court concludes that keeping this

action in this District is the most efficient way for the parties to reach a just and fair resolution of this action. Accordingly, Kottke's Motion to Transfer Venue is denied.

### 2. **Motion for Judgment on the Pleadings**

Kottke makes two arguments in its Motion for Judgment on Pleadings. First, Kottke argues that the Receiver, standing in the shoes of Option Capital, has no rights greater than those of Option Capital and may only assert a cause of action that would be available to Option Capital. Because Option Capital settled and dismissed its claim to the $159,000 when it entered into a Settlement Agreement with Kottke, the Receiver cannot now assert a cause of action to recover these funds. Second, Kottke contends the claims arising from the settlement in the Illinois Action are barred by res judicata. According to Kottke, the present action is barred because the January 24, 2002 order of Judge Kocoras approving the Settlement Agreement between Kottke and Option Capital was a final judgment on the merits involving the same parties and the same causes of action as this suit.

The Receiver rejects these contentions. The Receiver first notes that the Complaint in this action is brought not only on behalf of Option Capital but also on behalf of the LP Fund, a creditor of Option Capital. Because the LP Fund was not a party to the Settlement Agreement or the proceedings before Judge Kocoras, the parties are not the same in both actions. Further, the Receiver asserts that the causes of action raised in the Complaint, including fraudulent transfer under the Uniform Fraudulent Transfer Act of 1984, were not resolved or even raised in the Illinois Action. Finally, the Receiver argues that the claim for $159,000 on behalf of Option Capital is not barred because the Settlement Agreement was procured as a result of the fraudulent conduct of Paul Eustace.

As an initial matter, the Court finds that, based on the facts alleged by the Receiver, res judicata is not a bar to the Receiver's action against Kottke. The Third Circuit has laid out three requirements to determine whether res judicata applies to a subsequent action: (1) there was a final judgment on the merits in the prior suit; (2) the prior suit involved the same parties or their privies; and (3) the subsequent suit is based on the same causes of action. See CoreStates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187, 194 (3rd Cir. 1999). The second and third requirements are not met in this action.

Option Capital was a party to the Settlement Agreement. However, the Receiver represents the interests of all of Option Capital's creditors, including the LP Fund, which was not a party in the Illinois Action. See In re Cowden, 337 B.R. 512, 529-35 (W.D. Pa. 2006) (finding bankruptcy trustee was neither a party, nor in privity with a party for res judicata purposes when trustee represented not only creditors who were parties in the prior suit but also the interests of the remaining creditor body); see also In re Hill, 342 B.R. 183, 196 (D.N.J. 2006) (observing that the doctrines of collateral estoppel and res judicata did not apply because the creditors in that case were not parties to the prior proceeding).

Moreover, although both actions concern the $159,000 paid to Kottke pursuant to the Settlement Agreement, the Court must at this stage in the proceedings credit the Receiver's assertion that, at the time of the transfer, none of the creditors of Option Capital, including the LP Fund, knew of the Settlement Agreement or had an opportunity to challenge it, and Judge Kocoras never had an opportunity to hear from those creditors before entering an order approving the Settlement Agreement. If the Receiver is able to prove that Eustace acted on behalf of Option Capital without the knowledge or participation of its creditors, then Kottke's contention that the

fraudulent transfer claim brought by the Receiver in this case could have been brought in the Illinois Action fails.  Judge Kocoras's order approving the Settlement Agreement cannot bar the creditors of Option Capital from bringing this action because they failed to raise a claim in an action that was deliberately concealed from them.  See In re Cowden, 337 B.R. at 532 (holding court order approving settlement agreement does not bar fraudulent conveyance action that was neither brought nor could have been brought at the time of the prior litigation).

Even if the Court were to find that Judge Kocoras's order would normally bar such an action, if the Settlement Agreement was procured through fraud as is alleged in this case, it cannot be enforceable against the Receiver acting on behalf of Option Capital.  Contrary to Kottke's assertion, the Receiver is not seeking to void an agreement validly entered into by Option Capital and approved by a federal court.  Instead, the Receiver is arguing that the agreement itself was not valid because it was made with an intent to defraud. The Receiver urges this Court to follow the approach taken in the bankruptcy context where, depending on the circumstances, a trustee may avoid a transfer made pursuant to a settlement agreement, even if that agreement was approved by court order, when that transfer was made with the intent to defraud creditors of the debtor.  See, e.g., In re Hill, 342 B.R. at 196 (permitting trustee to avoid transfer made pursuant to divorce settlement proceeding where trustee was able to prove actual fraudulent intent on part of debtor); In re Cowden, 337 B.R. at 531 (holding res judicata did not bar trustee's fraudulent conveyance action where settlement agreement approved by court order did not establish the propriety or timing of the challenged transfer); see also Bullard v. Aluminum Co. of Am., 468 F.2d 11, 13-14 (7th Cir. 1972) (affirming district court's decision allowing trustee to avoid transfer made pursuant to a settlement agreement where undisputed

facts showed that transfer was fraudulent within the meaning of the Bankruptcy Act).

Particularly because this issue is before the Court on a Motion for Judgment on the Pleadings, where all factual inferences should be made in favor of the Receiver, this Court agrees that the existence of the Settlement Agreement does not preclude the Receiver from bringing this action, if that agreement was procured through fraud. Kottke's "reasonable interpretation of events" that the payment in the Illinois Action was the "court-supervised resolution of an ongoing dispute" does not square with the standard applied to a motion brought pursuant to Federal Rule of Civil Procedure 12(c). (Def.'s Reply Br. 8.) The Court must credit the Receiver's allegation that the Settlement Agreement and release are not valid because they were executed and procured as a result of Eustace's fraudulent conduct without the knowledge or consent of all necessary parties. A release will not be found valid if "executed and procured by fraud, duress, accident or mutual mistake." See Adena, Inc. v. Cohn, 162 F. Supp. 2d 351, 357 (E.D. Pa. 2001) (quoting Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 892 (3d Cir. 1975)) (finding plaintiffs' allegations regarding misrepresentations and omissions contained in settlement agreement were outside the scope of protection provided by release).

Furthermore, simply because the Receiver is acting on behalf of Option Capital to recover the investors' funds, the Receiver is not bound by an agreement Eustace, acting with the intent to defraud, signed on behalf of Option Capital at a point in time when Option Capital was entirely dominated by Eustace. It would create a perverse incentive indeed for a court to rule that a party who fraudulently enters into an agreement subsequently bars a trustee or receiver from bringing an action to recover the funds fraudulently transferred pursuant to that agreement.

The Seventh Circuit case of Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995), is

particularly persuasive on this point.  In that case, the principal wrongdoer created three corporations as part of a "Ponzi" scheme and then caused those corporations to create limited partnerships in which the corporations would be general partners and investors would be limited partners.  The corporations represented to prospective investors that the funds invested in the limited partnerships would be used to trade commodities.  Instead, the principal wrongdoer fraudulently transferred at least some of the invested funds to himself, his wife, several charities and one investor.  When the scheme was exposed, the bankruptcy court appointed a receiver to act on behalf of those corporations in recovering the funds the investors had lost in the scheme. The Seventh Circuit rejected the defendants' argument that the acts of the principal wrongdoer were attributable to the corporations after they went into receivership, and that the receiver therefore lacked standing to recover funds on behalf of those corporations:  "Now that the corporations created and initially controlled by [the principal wrongdoer] are controlled by a receiver whose only object is to maximize the value of the corporations for the benefit of their investors and any creditors, we cannot see an objection to the receiver's bringing suit to recover corporate assets unlawfully dissipated by [the principal wrongdoer]."  Id. at 755.  As the Seventh Circuit summed up, "the defense of in pari delicto loses its sting when the person who is in pari delicto is eliminated."  Id.  The Third Circuit has taken a similar approach in the bankruptcy context, finding that, once the principal wrongdoer had been removed from controlling a corporation, equitable considerations dictate that a trustee may seek to recover funds on behalf of the corporation in the interests of innocent investors.  See In re Personal & Business Ins. Agency, 334 F.3d 239, 246 (3d Cir. 2003).

In sum, because the Receiver alleges that the Settlement Agreement and the subsequent

court order approving that agreement were procured through Eustace's fraudulent conduct, the Court rejects Kottke's contention that the Receiver's action is barred and denies Kottke's Motion for Judgment on the Pleadings.

### 3. **Motion to Dismiss Counterclaim**

Kottke asserts in its Counterclaim that the Receiver, acting on behalf of Option Capital, has breached the Settlement Agreement and violated the court order approving that agreement by bringing this action against Kottke. In addition to seeking a judgment for any amount that Kottke may be required to pay the Receiver, Kottke also seeks the attorney's fees it has accumulated in defending this action. The Receiver responds that he is not bound by the fraudulent acts of Eustace who dominated Option Capital before the receivership was instituted and may disavow any agreements Eustace made on behalf of Option Capital with intent to defraud or in violation of the law.

While the Court agrees with the Receiver's general propositions of law, the Court must make all factual inferences in favor of Kottke when confronted with a Motion to Dismiss. If Kottke is able to show, inter alia, that Eustace's acts in entering into the Settlement Agreement on behalf of Option Capital were not fraudulent, Kottke may be able to prevail in a breach of contract action against Option Capital for violating the terms of the Settlement Agreement.[3] The Receiver's Motion to Dismiss Kottke's Counterclaim is denied.

### V. **Conclusion**

For the reasons outlined in the forgoing Memorandum, Kottke's Motion to Transfer

---

[3] The Receiver's alternative Motion to Dismiss Kottke's Request for Attorneys' Fees need not be resolved at this stage of the proceedings.

Venue, Kottke's Motion for Judgment on the Pleadings and the Receiver's Motion to Dismiss are denied.

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

C. CLARK HODGSON, JR., RECEIVER, et al.     :          CIVIL ACTION

v.                                          :

KOTTKE ASSOCIATES, LLC                      :          NO. 06-5040

## ORDER

_____AND NOW, this 31st day of July, 2007, it is hereby ORDERED that the Defendant's

Motion to Transfer Venue Pursuant to 28 U.S.C. Section 1404(a) (Doc. No. 5), Defendant's

Motion for Judgment on the Pleadings (Doc. No. 7) and Plaintiff's Motion to Dismiss the

Counterclaim (Doc. No. 10) are DENIED.

_____BY THE COURT:

  /s/ Michael M. Baylson_____

Michael M. Baylson, U.S.D.J.

A:\Hodgson v. Kottke MTD Memorandum & Order.wpd